## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cr-20558-KMM

UNITED STATES OF AMERICA

v.

ROMUEL ANGRAND,

      Defendant.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Defendant Romuel Angrand's Motion to Suppress Physical Evidence. (ECF No. 55). The Government filed a response in opposition. (ECF No. 58). Defendant did not file a reply. The matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law and/or to submit a Report and Recommendation regarding all matters and pretrial motions. (ECF No. 29). A hearing on the Motion was held on July 31, 2023. As I advised the Parties in open court, the undersigned respectfully **RECOMMENDS** that Defendant's Motion be **DENIED**.

## I.    BACKGROUND

The charges in this case arise from a traffic stop, subsequent detention of Defendant, and inventory search of Defendant's vehicle on November 29, 2021. Based on the evidence seized, Defendant was charged with conspiracy to commit access device fraud, possession of fifteen or more unauthorized access devices, aggravated identity theft, possession with the intent to distribute a controlled substance, and possession of a firearm and ammunition after previously being convicted of a felony. (ECF No. 24). Defendant moves to suppress the physical evidence seized during the traffic stop and the subsequent detention and inventory search, including: six credit

cards belonging to other persons found in Defendant's vehicle;[1] four driver's licenses or identification cards belonging to other persons, found in the trunk of Defendant's vehicle; four 12-gauge Winchester shotgun shells, found in the trunk of Defendant's vehicle allegedly wrapped in plastic bags and placed inside a box; five bags of suspected cannabis totaling 11.04 grams, found in the front left side pocket of the vehicle and inside the trunk; one sealed bag of suspected cannabis, weighing 219 grams, found in the trunk of Defendant's vehicle; one unsealed bag of suspected cannabis; one clear plastic bag containing four multicolored plastic baggies with suspected cannabis totaling 9.33 grams; one black Taurus 9-millimeter semiautomatic handgun, along with one empty magazine and three 9-mm projectiles, found underneath the driver's seat of the vehicle; and one black Samsung Galaxy S8 cellular phone, found on Defendant's person.

On July 31, 2023, the Court held an evidentiary hearing on Defendant's Motion. The Government called Lieutenant Rosa Carvajal ("Lt. Carvajal") and Officer Henry Fitoria ("Officer Fitoria") to testify at the hearing. Defendant also testified.

## II.     FINDINGS OF FACT

On November 29, 2021, around 12:40 A.M., Lt. Rosa Carvajal of the Miami Beach Police Department ("MBPD") was patrolling South Beach in a marked patrol car. Known as the "entertainment district," the area south of 11th Street between Collins Avenue and Washington Avenue is primarily comprised of hotels, restaurants, bars, and clubs; some serving alcohol up until 5:00 A.M. The area is known to law enforcement for "vice crimes," such as narcotics trafficking.

Lt. Carvajal observed a white 2020 Mazda sedan at a red light, at the intersection of

---

[1] Defendant does not contest that the white 2020 Mazda sedan involved in the traffic stop is registered in Defendant's name. At the hearing, Defendant testified that Sarina Hill has an interest in the vehicle and is providing payments to Defendant for the vehicle, but admits that the vehicle is registered in his name.

Washington Avenue and 10th Street.  The Mazda, later determined to be Defendant's car, was facing eastbound and stopped in the crosswalk, though a green light was indicated for its direction of travel.  Lt. Carvajal testified that blocking the crosswalk constitutes a traffic violation under Florida law.

Defendant's vehicle then made a right turn onto Washington Avenue and headed southbound.  Lt. Carvajal followed Defendant's vehicle southbound, remaining two car lengths behind Defendant's vehicle and with no vehicles between them.  Lt. Carvajal observed flashing of high beams from Defendant's car, approximately ten times, around the intersection of 9th Street and Washington Avenue.  Lt. Carvajal followed Defendant southbound to a red light at the intersection of 5th Street and Washington Avenue.  At the light change, Defendant made a left hand turn from the center lane; there is a dedicated left-turn lane at that intersection.  Lt. Carvajal testified that turning left from the center lane where there is a devoted left turn lane constitutes a traffic violation under Florida law.

Defendant's vehicle then proceeded eastbound on 5th Street.  Defendant approached a red light at the intersection of 5th Street and Collins Avenue.  Defendant stopped at the red light, but then proceeded to make a left turn while the light remained red.  Lt. Carvajal testified that running a red light is a traffic infraction under Florida law.

Defendant proceeded to head northbound on Collins Avenue.  While following Defendant's vehicle northbound on Collins Avenue, Lt. Carvajal decided to conduct a traffic stop and reported same over the police radio.  Lt. Carvajal testified that she requested backup for the stop because of the late hour of the night; she is a female officer, alone; the vehicle had dark tinted windows, and she could not see how many occupants were in the vehicle; and for her safety, she wanted backup.  As Defendant approached 11th Street, he made a left turn heading west on 11th Street.  Once Lt. Carvajal saw at least one officer behind her, Lt. Carvajal turned on her lights to

effectuate a traffic stop.  Defendant was stopped near 11th Street and Collins Court.

When Lt. Carvajal got out of her vehicle, she noticed that the windows of Defendant's vehicle were heavily tinted.[2]  Before approaching the vehicle, Lt. Carvajal activated her body worn camera, which activates recording from a short time before activation.  Lt. Carvajal approached Defendant's vehicle on the driver's side.  Defendant's driver's window was down, but the other windows remained rolled up.

Defendant had his left arm out of the window with a driver's license in his hand.  Lt. Carvajal then directed Defendant to show his hands.  Defendant then reached out both hands out of the window.  Defendant's right hand then returned into the vehicle after following Lt. Carvajal's command.  Lt. Carvajal then demanded to see both of Defendant's hands again.  Lt. Carvajal then inquired if anyone was in the back of the vehicle and then attempted to open the back door of Defendant's vehicle, but it did not open.  Defendant responded that no one was in the back of the vehicle.

Lt. Carvajal then drew her weapon.  Lt. Carvajal advised Defendant to stop reaching inside his vehicle and asked again if anyone was in the backseat.  Defendant answered that there was no one in the backseat.  Lt. Carvajal then advised Defendant to lower all windows, and Defendant complied.  Lt. Carvajal demanded Defendant to get out of the vehicle.

Officer Henry Fitoria, who was first to arrive behind Lt. Carvajal, went to the driver side of the vehicle with Lt. Carvajal and MBPD Officer Stephanne Brown-Rosquete ("Officer Brown-Rosquete").  Defendant was taken out of the vehicle, put in handcuffs, and patted down.

Passenger Sarina Hill ("Hill") was removed from the vehicle.  Defendant, seated on the

---

[2]  I acknowledge the apparent conflict in her testimony that she noticed the heavy tinting on the windows *after* she stopped the car with her testimony that she asked for back-up *because*, among other facts, the windows were heavily tinted.

ground outside the car, demanded to know why he was pulled over; he was quite agitated by Lt. Carvajal's display of her firearm.  Carvajal listed off the four traffic infractions she witnessed. Defendant denied the traffic infractions and questioned why, if she had actually observed so many offenses, she continued to follow him without stopping him for so long.

Lt. Carvajal testified that when the car doors were opened, she smelled marijuana from the car—burnt marijuana specifically.  She testified that the smell of burnt marijuana was "very strong."  At that point, Lt. Carvajal testified, she was conducting a narcotics investigation based on her observations.

Lt. Carvajal approached Hill and asked if there was any "weed"[3] in the vehicle.  Hill answered that she had smoked.  Lt. Carvajal persisted and asked again if there was any marijuana in the car; Hill answered "not that I'm aware of, but if there is, it's mine."  Lt. Carvajal looked inside the car and found a cup in the center console with a marijuana cigarette inside, and a small amount of marijuana in the passenger door compartment.   At some point, Lt. Carvajal was approached by Officer Fitoria, who told her about an encounter he had with Defendant on the previous day; Officer Fitoria encountered Defendant in his vehicle, parked in an alley in a no-parking area.  When Officer Fitoria had approached the car, Defendant closed his door.  Officer Fitoria spoke with him long enough to assess his demeanor as erratic and fidgety; Officer Fitoria found Defendant in possession of marijuana on that day as well.  He elected not to arrest Defendant but just to issue a warning about his misdemeanor possession of marijuana.   Officer Fitoria described the encounter to Lt. Carvajal, as well as his assessment that Defendant's behavior appeared even more erratic on the night of his arrest.

As Lt. Carvajal searched the passenger side of the car for marijuana, Officer Fitoria

---

[3]  The Court understands this to be a slang term for marijuana.

searched the driver side.  Video from the camera worn by Lt. Carvajal reveals that almost immediately, Officer Fitoria found a firearm under the driver's seat.  Lt. Carvajal took the firearm and cleared it for safety.  By this time, a records check had informed the officers that Defendant had previously been convicted of a felony and the decision was made to arrest him and Hill.  Because the vehicle would be towed to inventory, and consistent with the MBPD tow policy, officers conducted an inventory search including the trunk of the vehicle.  The inventory search revealed over 400 grams of marijuana, Winchester shotgun shells, identification cards belonging to other people, brass knuckles, digital scales, bags with marijuana residue, baggies consistent with sale of narcotics, a laptop, and a ledger and miscellaneous documents allegedly containing personal identifying information found in the trunk of the vehicle.  Defendant's phone and his credit cards were seized from the passenger compartment; officers also found a bag with over four (4) grams of marijuana in Defendant's pocket.

Defendant Angrand testified that he is the owner of the car, though he and Hill have equal access to it.  Angrand denied that he committed any of the traffic violations described by Lt. Carvajal.

## III.    DISCUSSION

### A.    Probable Cause Supported the Vehicle Stop

The Fourth Amendment secures us against unreasonable searches and seizures.  U.S. Const. amend. IV.  A traffic stop, which is a seizure within the meaning of the Fourth Amendment, is constitutional if it is "either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance" with *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009).

"Law enforcement 'may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating

to the operation of motor vehicles.'"  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)); *see United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) ("[The officer] had probable cause to stop the taxicab because he observed the taxicab commit a traffic violation when it failed to signal during a lane change.").

Lt. Carvajal testified credibly that Defendant committed four distinct traffic infractions by blocking a crosswalk, flashing his lights, making an improper left turn from the center lane, and running a red light.  Probable cause thus supported her traffic stop, which she effectuated after observing Defendant Angrand run a red light.

Defendant Angrand denies having run the red light; indeed he testified that he would not run a red light knowing that an officer was following behind him.  I credit his testimony that generally, he would not knowingly commit a traffic infraction in plain view of law enforcement but on the date of his arrest, he admits that he had marijuana in his pocket.  If he was under the influence of a narcotic, this would undermine his ability to perceive and recall the event accurately; alternatively, if the marijuana was not for his personal use but for distribution, he was then engaged in a crime.  Either scenario I find would affect the credibility of his testimony about the night of his arrest and I afford greater weight to Lt. Carvajal's testimony.  Additionally, while the traffic infractions were not corroborated by physical evidence or the testimony of any other witness, Lt. Carvajal's testimony about the events of the night were in other material respects corroborated by both the video and testimony of other witnesses, including Defendant.

Any one of the traffic violations witnessed by Lt. Carvajal would be sufficient to find probable cause to effectuate a traffic stop.  Once a brief, investigatory traffic stop is made, "an officer's actions during a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place,'" and "[t]he traffic stop may not last 'any longer

than necessary to process the traffic violation,' unless there is articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997)) (emphasis omitted).  The Court now turns to the scope of investigation that ensued.

    **B.**    **Defendant's Removal from the Vehicle**

The Government argues that the officers had an articulable, reasonable suspicion that Defendant was armed and dangerous, and thus the officers lawfully removed Defendant from his vehicle.  The Government argues that Lt. Carvajal had a reasonable suspicion Defendant was armed and dangerous because she was unable to see inside the vehicle with the tinted windows, she was unable to determine if other occupants were in the vehicle, Defendant failed to comply in showing his hands, the area is known for its high-crime and high narcotics use, it was nearly 1:00 A.M., and Defendant demonstrated an unusual, erratic driving pattern.

Defendant argues that Lt. Carvajal did not have reasonable suspicion that Defendant was armed and dangerous and, as such, unlawfully removed Defendant from the vehicle.  Defendant argues that Lt. Carvajal gave instructions to show both of his hands, with which he complied. Defendant argues that Lt. Carvajal did not specifically command Defendant to keep both hands out of the window at first and, as such, his returning of his right hand into the vehicle cannot be seen as him disobeying Lt. Carvajal's commands.  Defendant argues that Lt. Carvajal drew her weapon prematurely causing Defendant to be in a state of confusion and panic and is not a basis for him to be considered armed and dangerous.

"It is well established that officers conducting a traffic stop may 'take such steps as are reasonably necessary to protect their personal safety.'" *Purcell*, 236 F.3d at 1277 (alterations omitted).  These steps can include "requiring the driver and passengers to exit the vehicle 'as a matter of course.'" *Spoerke*, 568 F.3d at 1248 (quoting *Maryland v. Wilson*, 519 U.S. 408, 410

(1997)).

Lt. Carvajal effectuated the stop of Defendant late at night.  Upon exiting her marked vehicle, Lt. Carvajal testified that she could not see inside of Defendant's vehicle or who else was in Defendant's vehicle because of how tinted the windows were.  Defendant's traffic violations demonstrated erratic driving.  Additionally, Lt. Carvajal is female and was following Defendant alone in a high crime area.  Accordingly, Lt. Carvajal removing Defendant from the vehicle was a reasonable step necessary to protect Lt. Carvajal's safety given the totality of the circumstances.

While the Government urges the Court to make a finding that Defendant was evasive, armed, and dangerous, such a finding is not necessary to conclude that Lt. Carvajal properly demanded and subsequently removed Defendant from the vehicle.  Lt. Carvajal was permitted to require Defendant to exit the vehicle as a matter of course.

### C.      Defendant's Subsequent Pat-down

The Government similarly argues, as above, that the officers lawfully conducted the pat-down of Defendant after Defendant's removal from the vehicle because the officers had an articulable, reasonable suspicion that Defendant was armed and dangerous.  The lawful nature of the pat-down is not contested by Defendant.

Officers are permitted to conduct "a protective search of the driver, the passengers, and the vehicle" to protect their personal safety.  *Purcell*, 236 F.3d at 1277 (citations omitted).  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010) (emphasis omitted) (quoting *Terry*, 392 U.S. at 27) (finding "the limited pat-down search of [defendant] did not violate the Fourth Amendment" given the totality of the circumstances).

As noted above, Lt. Carvajal effectuated the stop of Defendant late at night. Upon exiting her vehicle, Lt. Carvajal noticed that she could not see inside of Defendant's vehicle or who else was in Defendant's car because of how tinted the windows were. Lt. Carvajal testified that upon initial approach she could also smell marijuana emanating from the vehicle. Additionally, Defendant's traffic violations demonstrated erratic driving. Lt. Carvajal is female and was following Defendant alone in a high crime area. Accordingly, the totality of the circumstances indicates that the pat-down of Defendant after removing him from the vehicle was reasonable.

### D.    Search of Defendant's Vehicle

Defendant argues that the search of his vehicle was unlawful because the officers made no effort to determine if the alleged smell of marijuana was emanating from marijuana or hemp, which is a legal substance. Defendant asserts that the officers did not ask the occupants of Defendant's vehicle what they consumed, there were no chemical tests done, and the Government cites to no professional background, training, or experience in the ability to distinguish the scent of marijuana from hemp. Defendant argues that without further evidence supporting the warrantless search of Defendant's vehicle, the officers did not have probable cause of a narcotics investigation.

The Government argues that the officers had probable cause to search the vehicle because Lt. Carvajal smelled marijuana and Hill stated she had "smoked" in response to Lt. Carvajal's questioning about "weed." The Government argues that Florida law makes no distinction between hemp and marijuana for a probable cause analysis. The Government additionally counters that Lt. Carvajal did ask Defendant and Hill whether they had smoked marijuana, and a field test of the marijuana was conducted, which tested positive.

"Under the automobile exception to the warrant requirement, 'the police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.'" *United States v. Delva*, 922 F.3d 1228, 1243 (11th Cir. 2019) (quoting

*California v. Acevedo*, 500 U.S. 565, 580 (1991)) (alterations omitted).  For a warrantless search of an automobile to be constitutional, "(1) the automobile must be readily mobile, and (2) there must be probable cause to believe that it contains contraband or evidence of a crime." *United States v. Lanzon,* 639 F.3d 1293, 1299–300 (11th Cir. 2011).  Probable cause exists to conduct a warrantless search when "there is a fair probability that contraband or evidence of a crime will be found in the vehicle" under the totality of the circumstances.  *United States v. Tamari*, 454 F.3d 1259, 1261–62 (11th Cir. 2006) (quotations omitted).

"In a long line of cases, we have held that the smell of marijuana coming from a person's house or vehicle establishes probable cause for a search." *United States v. Williams*, 731 F. App'x 863, 867 (11th Cir. 2018) (collecting cases); *see United States v. Cheeks*, 795 F. App'x 805, 811–12 (11th Cir. 2019) (holding an extended stop justified as "[o]ur precedent makes clear that an officer's level of suspicion rises to the level of probable cause when he detects 'what he knows from his law enforcement experience to be the odor of marijuana'") (alterations omitted).

Lt. Carvajal testified that she smelled marijuana upon initial approach of the vehicle. Officer Fitoria testified that upon opening of the doors of the vehicle he could also smell marijuana emanating from the vehicle.  Lt. Carvajal additionally testified that she was trained that there is no distinction between the smell of hemp and marijuana.  Under Florida law, "regardless of whether the smell of marijuana is indistinguishable from that of hemp, the smell of marijuana emanating from a vehicle continues to provide probable cause for a warrantless search of the vehicle." *Owens v. State*, 317 So. 3d 1218, 1220 (Fla. 2d DCA  2021), *reh'g denied* (June 2, 2021), *review denied*, No. SC21-943, 2021 WL 5149948 (Fla. Nov. 5, 2021).  Accordingly, as Lt. Carvajal and Officer Fitoria testified that they smelled marijuana emanating from Defendant's vehicle, they had sufficient probable cause for a warrantless search of Defendant's vehicle.

### E.     Inventory Search of Defendant's Vehicle

The Government argues that the continued search of Defendant's vehicle was a properly effectuated inventory search following Defendant's arrest for the possession of marijuana.  The Government argues that the inventory search of the Defendant's vehicle was conducted pursuant to the Miami Beach Police Department Standard Operating Procedure 133, General Order 17-04, and General Order 21-03 (collectively, the "MBPD Tow Policy"), thus the items recovered during the inventory search, including Defendant's phone and laptop, the over 400 grams of marijuana, the Winchester shotgun bullets, the brass knuckles, the digital scales, the baggies, the identification cards belonging to other persons, and the ledger and loose documents allegedly including personal identifying information of others, were lawfully seized.  Defendant does not contest the lawful nature of the inventory search of Defendant's vehicle.

The Supreme Court has held that inventory searches of lawfully impounded vehicles are an exception to the general warrant requirement of the Fourth Amendment.  *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987).  For an impoundment of a vehicle to be lawful, it must be done according to an established routine practice and "on the basis of something other than suspicion of evidence of criminal activity." *Florida v. Wells*, 495 U.S. 1, 4 (1990).  "The established procedure, however, need not be detailed." *United States v. Joseph*, 611 F. App'x 946, 948 (11th Cir. 2015). "[P]olicies of opening all containers or of opening no containers are unquestionably permissible." *Wells*, 495 U.S. at 4.

"The policy or practice governing inventory searches should be designed to produce an inventory.  The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Id.* "[I]nventory searches are 'limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would

otherwise be impermissible.'" *United States v. Crawford*, 294 F. App'x 466, 472 (11th Cir. 2008). "Nevertheless, the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *Id.*

Lt. Carvajal and Officer Fitoria testified that the inventory search of Defendant's vehicle was conducted pursuant to the MBPD Tow Policy.  Lt. Carvajal testified that Defendant's vehicle was towed because Defendant and the passenger were taken into custody and the vehicle would be left unattended on the street under section I(7) of the Policy.

The MBPD Tow Policy requires that the officer give the person having custody of the car a reasonable opportunity, in light of the circumstances, to provide for removal of the vehicle within a reasonable amount of time.  (ECF No. 58-2 at 1).  Lt. Carvajal testified that with no one else in the vicinity of the stop, the only other passenger in the car being taken into custody as well, how late in the night the stop was conducted, and it not being common to call someone at 1:00 A.M. to retrieve a vehicle that there was no reasonable opportunity for Defendant to provide for removal of the vehicle within a reasonable amount of time.

Lt. Carvajal testified that the vehicle was inventoried prior to removal to account for all equipment as required under section III(A)(4) of the MBPD Tow Policy.  Lt. Carvajal additionally testified that the impound and tow procedures provided by section VI(A)(1)–(13) of the Policy were complied with in towing and impounding the vehicle.  Lt. Carvajal testified that the inventory of Defendant's vehicle was recorded on multiple officer's BWC pursuant to General Order 17-04 of the MBPD Tow Policy.  Given that the officers followed the MBPD Tow Policy to impound Defendant's vehicle, the Court finds that the inventory search of Defendant's vehicle was properly effectuated.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant's

Motion to Suppress Physical Evidence (ECF No. 55) be **DENIED**.

The parties will have **seven (7) days**[4] from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge; response thereto shall similarly be filed within **seven (7) days** of any objections filed.  Pursuant to Fed. R. Crim. P. 59(b), Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the Parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida this 29th day of August, 2023.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:    Honorable K. Michael Moore
       Counsel of Record

---

[4]  The period for objections has been shortened because the recommendation and reasoning were both announced at the evidentiary hearing on July 31, 2023.